# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO: 8:18-cr-00202-CEH-CPT

MARIO LOZANO
_____

## ORDER

This cause comes before the Court on Defendant Mario Lozano's Motion for Compassionate Release (Doc 66). Proceeding *pro se*, Lozano requests compassionate release based upon his underlying medical conditions and the risks of the COVID-19 pandemic, as well as his familial obligations, which include caring for his ill mother and the minor children in her custody. The Government opposes Lozano's motion (Doc 67), and Lozano has replied (Doc 68). Also before the Court is Lozano's Motion for Judicial Notice (Doc. 70).

Upon review and consideration, and being fully advised in the premises, the Court will deny the motion for compassionate release, and grant-in-part and deny-in-part the motion for judicial notice.

### I. BACKGROUND

On March 13, 2021, Lozano was sentenced to 97 months' incarceration upon his guilty plea to conspiracy to distribute and possess with the intent to distribute 50 grams or more of methamphetamine, based on conduct continuing through on or

about March 29, 2018. Doc. 64. Now 35, Lozano is incarcerated at FCI Coleman Low.[1]

Lozano moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), arguing that in addition to both of his own underlying conditions—hypertension and obesity—which place him at particular risk if he contracts COVID-19, Lozano's mother cannot care for herself due to an illness, and he is the only person who can care for her and the minor children in her custody. Doc. 66 at 5. Lozano attaches his mother's medical records, a proposed release plan, and his original request to staff for release. Doc. 66-1.

Responding in opposition, the Government argues that Lozano has not met his burden of showing that he is entitled to compassionate release. Doc. 67. The Government asserts that potential COVID-19 exposure and its consequences are not a basis for sentence reduction, especially given that Lozano has refused the vaccine. *Id.* at 3, citing Doc. 67-1.  In any event, the Government argues the 18 U.S.C. § 3553(a) factors weigh against granting him early release considering the seriousness of his offense. Doc. 67 at 5-6.

Lozano replies that his choice to decline the COVID-19 vaccine is not a factor in the compassionate release analysis, and is a choice "of religious perseverance [that] is absolutely sover[e]ign." Doc. 68 at 1-2.  He further contends that the vaccine carries

---

[1] Lozano identified Coleman Federal (Medium) Penitentiary as his place of residence at the time he filed the motion (Doc. 68 at 3), but, the Bureau of Prisons ("BOP") identifies his current location to be FCI Coleman Low.

its own health risks, arguing that the Government has not proven it is safe and effective. *Id.* at 4-5. Lozano also challenges and denies the Government's insinuation that he was involved with a cartel, asserting that he is not a danger to society. *Id.* at 5-6. Finally, he reiterates his concern about caring for his mother and his health conditions combined with the COVID-19 pandemic. *Id.* at 3-4.

In a subsequently-filed motion, Lozano asks the Court to take judicial notice of a statement in 18 U.S.C. § 3582(a) that "imprisonment is not an appropriate means of promoting correction and rehabilitation," and of his November 2022 diagnosis of a severe thyroid condition that is causing him to gain weight. Doc. 70.

## II. LEGAL STANDARD

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c). Effective December 21, 2018, section 603 of the First Step Act of 2018 amended section 3582(c)(1)(A) by adding a provision that allows incarcerated individuals to directly petition a district court for compassionate release. That provision states:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> > (A) the court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant after the defendant has fully exhausted all*

3

> *administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier*, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction; or
>>
>> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure. . . .

18 U.S.C. § 3582(c)(1) (italics reflecting amendment under First Step Act). Courts are to consider the factors listed in 18 U.S.C. § 3553(a), as applicable, as part of the analysis.[2] *See* § 3582(c)(1)(A).

---

[2] These factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth

### III.   DISCUSSION

As a threshold matter, the Court finds, and the Government does not dispute, that Lozano has adequately exhausted his administrative remedies. Under 18 U.S.C. § 3582(c)(1), a defendant must exhaust administrative remedies with the Bureau of Prisons prior to filing a motion for compassionate release. "Section 3582(c)(1)(A) unambiguously provides that a defendant may either move for compassionate release after the defendant has fully exhausted administrative remedies *or* 'the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier.'" *United States v. Smith*, 482 F. Supp. 3d 1218, 1223 (M.D. Fla. 2020) (emphasis in original) (quoting 18 U.S.C. § 3582(c)(1)(A)). Lozano provided documentation of a request for compassionate release through an Inmate Request to Staff form, which was submitted to a counselor on July 18, 2021. Doc. 66-1. More than thirty days passed before the filing of his motion for compassionate release on September 23, 2021. Doc. 66 at 3. The Court therefore finds that he has satisfied the exhaustion requirement.

However, Lozano has not established an extraordinary and compelling reason that warrants compassionate release. Pursuant to *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013), a defendant must establish that a sentence reduction is warranted. Specifically, under 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step

---

in the guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

5

Act, a defendant must show (1) that he is 70 years old and has served at least 30 years of incarceration and meets other enumerated criteria; or (2) that he has an extraordinary and compelling reason for compassionate release. Here, Lozano is 35 years old and was not sentenced until 2021. Thus, he does not qualify for compassionate release under the first provision of 18 U.S.C. § 3582(c)(1)(A) and must instead demonstrate an extraordinary and compelling reason to satisfy § 3582(c)(1)(A)(ii).

The Eleventh Circuit has held that "extraordinary and compelling reasons" that permit the grant of compassionate release are exclusively defined by the policy statement of the United States Sentencing Commission contained in U.S.S.G. § 1B1.13, cmt. n.1. *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). Such reasons are: the defendant's medical condition, his age, his family circumstances, or another reason that is determined by the Director of the Bureau of Prisons. U.S.S.G. § 1B1.13, cmt. n.1. This list of reasons is exhaustive. *Bryant*, 996 F.3d at 1265-66. Lozano argues that his own health conditions, which place him at greater risk from COVID-19, as well as his mother's illness and the minor children in her charge, constitute extraordinary and compelling reasons. Doc. 66 at 5.

Under the policy statement at U.S.S.G. § 1B1.13, cmt. n.1(A), an incarcerated individual's medical condition may be considered an extraordinary and compelling reason for sentence reduction when he is: (1) suffering from a terminal illness, i.e., a serious and advanced illness with an end of life trajectory; or (2) suffering from a serious physical or medical condition that substantially diminishes his ability to care

for himself within the prison environment and from which he is not expected to recover. U.S.S.G. § 1B1.13, cmt. n. 1(A).

Lozano explains that he suffers from severe obesity as the result of a recently-diagnosed thyroid condition, for which he is now being treated with medication. Doc. 68 at 3; Doc. 70 at 2.[3] He argues that his weight and the other medical issues of which he has a family history could prove fatal if he contracts COVID-19. Doc. 68 at 3-4. Lozano has not provided any medical records to document his health conditions. *See United States v. Rind*, 837 Fed. Appx. 740, 744 (11th Cir. 2020) (upholding denial of motion for compassionate release due to weight, diabetes, hypertension, and high blood pressure because of a lack of medical evidence proving the conditions were at an acute level); *United States v. Heromin,* 8:11-cr-550-VMC-SPF, 2019 WL 2411311, *2 (M.D. Fla. June 7, 2019) (Covington, J.) (denying motion for compassionate release due to lack of corroboration from medical provider). Even if he had provided documentation, however, Lozano has not alleged or demonstrated that his conditions are permanent and severe enough to prevent him from caring for himself within the prison environment. *See United States v. Miller*, No. 22-12157, 2023 WL 1876351, *2 (11th Cir. Feb. 10, 2023) (upholding denial of compassionate release because petitioner did not show that his obesity, pre-diabetes, and hypertension substantially diminished his ability to provide self-care in prison). Indeed, he alleges that he has now received a diagnosis and medication for the underlying medical issue that is

---

[3] Although he also mentioned hypertension in his initial motion, his subsequent filings do not refer to this condition.

causing his obesity. Doc. 70. Therefore, he has not established that his medical conditions satisfy the strict policy statement definition of medical condition that constitutes an extraordinary and compelling reason.

Nor can Lozano rely on the combination of his medical conditions and any risks the COVID-19 pandemic presents. The Eleventh Circuit has held that the COVID-19 pandemic does not permit a district court to deviate from the policy statement's requirements even where an incarcerated individual's medical conditions put him at particular risk of serious consequences from contracting COVID-19. *See United States v. Giron*, 15 F.4th 1343, 1346-47 (11th Cir. 2021) (the confluence of defendant's medical conditions and the COVID-19 pandemic did not create an extraordinary and compelling reason for compassionate release); *see also*, *e.g.*, *United States v. Willhite*, No. 21-10441, 2022 WL 424817, *1-2 (11th Cir. Feb. 11, 2022) (same); *United States v. Pearson*, No. 21-10750, 2021 WL 4987940, *1-2 (11th Cir. Oct. 27, 2021) (same). Therefore, while Lozano may be at a higher risk of serious medical consequences if he contracts the COVID-19 virus (Doc. 68, at 4), binding Eleventh Circuit precedent holds that this is not an extraordinary or compelling reason for compassionate release. The Court also notes that Lozano's refusal of the COVID-19 vaccine, although within his rights to do so, undermines the premise of his motion. *See United States v. Kurbatov*, No. 18-cr-20172, 2021 WL 1923289, *3 (S.D. Fla. May 13, 2021) ("Courts across the country are consistently holding that an inmate's refusal to get a COVID-19 vaccination negates a claim that the inmate's risk of serious illness from COVID-19 is an extraordinary and compelling reason for early release); *United States v. Holman*, No.

8

3:18-cr-43, 2021 WL 1193380, *1 (M.D. Fla. Mar. 30, 2021) (finding no compelling and extraordinary reasons warranting compassionate release where defendant was offered, but refused, the COVID-19 vaccine).

Next, Lozano argues that his family circumstances constitute an extraordinary and compelling reason for compassionate release. The policy statement provides that "family circumstances" may constitute an extraordinary and compelling reason to grant compassionate release in the event of: "(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children; (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n. 1(C).

Lozano alleges that he is the only family member who can provide care for his ill mother and his minor children, for whom his mother is the caregiver. Doc. 66 at 5; Doc. 68 at 2. Although, on its face, this reason could fall within the first part of the policy statement's definition of family circumstances, Lozano has failed to establish that his mother is incapacitated. The medical records he attaches state that she has diabetes and GERD, which are being treated with medication, as well as low back pain that resulted in a referral to physical therapy. Doc. 66-1. There is no indication that these conditions render her unable to care for herself or the children. *See United States v. Lee*, 857 Fed. Appx. 556, 557 (11th Cir. 2021) (upholding denial of compassionate release despite petitioner's mother's poor kidney health). In addition, it is unclear that Lozano is the only available caregiver for the children even if his

mother were incapacitated. His proposed release plan identifies his father and brother as people who would be able to support him in the community; he does not explain why they are unable to care for his children. Doc. 66-1 at 5-8; *see United States v. Harvey*, No. 21-14342, 2022 WL 3156168, at *2 (11th Cir. Aug. 8, 2022) (upholding denial of compassionate release where petitioner had other family members in place to provide support). Lozano has therefore failed to satisfy the policy statement's definition of family circumstances that constitute an extraordinary and compelling reason for release.

Because Lozano has not met his burden of establishing an extraordinary and compelling reason for compassionate release under the strict terms of the policy statement, his motion for compassionate release must be denied.[4]

With respect to Lozano's Motion for Judicial Notice, the Court finds that it is due to be granted-in-part and denied-in-part. The Court will take judicial notice of the statement in 18 U.S.C. § 3582(a) that, "in determining the length of the term" of imprisonment when sentencing a defendant, courts must recognize "that imprisonment is not an appropriate means of promoting correction and rehabilitation." Doc. 70 at 1-2. However, the Court is also bound by the prohibition in § 3582(c) that a court "may not modify a term of imprisonment once it has been imposed," except in very limited circumstances. With respect to Lozano's request that

---

[4] Because the Court has determined that Lozano is not eligible for a sentence reduction based upon its finding that no extraordinary or compelling reason exists, it need not analyze the factors listed in 18 U.S.C. § 3553(a).

the Court take judicial notice of his new medical diagnosis, Doc. 70 at 2, the Court declines to do so because it finds Lozano has not provided adequate proof, or any documentation whatsoever, of the diagnosis. Nonetheless, in the preceding analysis the Court found that Lozano's medical conditions would not constitute an extraordinary and compelling reason even if he had documented them with medical records. Its decision regarding judicial notice is therefore immaterial to the result of Lozano's compassionate release motion.

Accordingly, it is **ORDERED**:

1. Defendant Mario Lozano's Motion for Compassionate Release (Doc 66) is **DENIED**.

2. Lozano's Motion for Judicial Notice (Doc. 70) is **GRANTED-IN-PART** and **DENIED-IN-PART**.

**DONE** and **ORDERED** in Tampa, Florida on October 30, 2023.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties